**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| CHARLES HULL, *individually, and on behalf of others similarly situated,*<br><br>Plaintiff,<br>v.<br><br>CLARITY DEBT RESOLUTION, INC.,<br><br>Serve registered agent at:<br>Registered Agents, Inc.<br>1500 N. Grant Street, Ste. R<br>Denver, Colorado 80203<br><br>Defendant. | Case No.: 1:25-cv-1149<br><br><br><br>**Jury Trial Demanded** |

**CLASS ACTION COMPLAINT**

COMES NOW Plaintiff Charles Hull ("Hull"), individually, and on behalf of all others similarly situated, and for his Class Action Complaint against Defendant Clarity Debt Resolution, Inc. ("Defendant"), states:

**BACKGROUND**

1. The receipt of unwanted robocalls has been, for many years, the top consumer complaint made to state and federal agencies around the country. This case is about stopping incessant robocallers, like Defendant, from placing robocalls to the cell phones of Hull and likely thousands of other persons without first obtaining the proper consent to place such calls.

2. Hull brings this class action lawsuit against Defendant for improperly placing prerecorded voice calls, i.e., robocalls, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"), and the TCPA's corresponding regulations.

3. Hull also brings this class action lawsuit against Defendant for improperly placing these calls to persons whose phone numbers were registered on the National Do-Not-Call Registry

("DNC List"), in violation of the TCPA, U.S.C. § 227 *et seq.*, and the TCPA's corresponding regulations.

4. In 1991, after passage with bipartisan support in Congress, President George H.W. Bush signed the TCPA into law, to protect consumers' consumers' privacy and the right to be left alone from unwanted telemarketing communications.

5. A leading sponsor of the TCPA described unwanted telemarketing calls as "the scourge of modern civilization." 137 Cong. Rec. 30821 (1991).

6. Defendant incessantly placed robocalls to Hull and the putative class members despite not having "prior express written consent," or any form of consent, to place such calls.

7. Highlighting the problems of robocalls in this country, in March 2025 alone, approximately 4.8 billion robocalls were placed in the United States, or approximately 155 million each day. RobocallIndex.com, YouMail Robocall Index, https://robocallindex.com (last visited April 4, 2025). The private right of enforcement of the TCPA is critical to stopping the proliferation of these unwanted telemarketing communications. For example, while the Federal Communications Commission levied over $200 million in penalties against telemarketers between 2015 and 2018, it collected less than $7,000 of that amount. *See* Sarah Krouse, *The FCC Has Fined Robocallers $208 Million. It's Collected $6,790*, THE WALL STREET JOURNAL, March 28, 2019, https://www.wsj.com/articles/the-fcc-has-fined-robocallers-208-million-its-collected-6-790-11553770803.

8. Hull seeks to represent a class of persons, who, like himself, received prerecorded voice calls from or on behalf of Defendant.

9. Hull further seeks to represent a class of persons, who, like himself, received call from or on behalf of Defendant despite their phone numbers being registered on the DNC List.

## PARTIES AND BACKGROUND ON THE PARTIES

10. Hull is an individual who at all times material to this Complaint resided in Denver, Colorado, and has been a citizen of the State of Colorado.

11. Defendant is a California corporation who has been registered as a foreign limited liability company in the State of Colorado and has been in good standing to transact business in Colorado and throughout the United States at all times material to this Complaint.

12. One of Defendant's websites is www.usclarity.com.

13. Defendant's website states that Defendant provides "debt resolution" services.

14. Defendant's LinkedIn profile states that Defendant "aims to help US consumers reduce their debt by negotiating with creditors to settle their debts for less than the full amount owed."

15. Defendant's website states that it charges consumers a "service fee" of 25% of a consumer's original debt amount for each account that it settles for the consumer.

16. On information and belief, Defendant offers consumers consolidation loans to consumers, and those consumers rarely, if ever, qualify for such loans. Once the consumer does not qualify, Defendant will then sell consumers its "debt resolution" services.

17. Defendant markets its services, in part, through placing telemarketing calls to consumers like Hull and the putative class members, or having such calls placed on its behalf.

## JURISDICTION AND VENUE

18. This Court has subject-matter jurisdiction over the TCPA claims in this action under 28 U.S.C. § 1331, which grants this court original jurisdiction of all civil actions arising under the laws of the United States. *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 386-87

(2012) (confirming that 28 U.S.C. § 1331 grants the United States district courts federal-question subject-matter jurisdiction to hear private civil suits under the TCPA).

19. This Court has jurisdiction over Defendant because Defendant directed its telemarketing efforts to Hull in the state of Colorado, and the harms sustained by Hull that are the subject of this Complaint were felt by Hull in this District.

20. This Court has jurisdiction over Defendant maintains a registered agent in the State of Colorado.

21. This Court has jurisdiction over Defendant because is continuously and systematically transacts business in the State of Colorado. As such, among other things, Defendant has a "Debt Management Service Provider" license from the State of Colorado. Defendant's license is current and bears license number DMG-2000048. Defendant's license became active on October 2, 2024.

22. For these reasons, and as set forth generally in this Complaint, this Court has personal jurisdiction over the parties to this action, and venue is proper pursuant to 28 U.S.C. §1391(b)(2).

**DEFENDANT'S INCESSANTLY PLACES ROBOCALLS TO HULL**

23. At all times relevant to this Complaint, Hull owned a phone bearing the phone number 347-XXX-1274.

24. Hull registered his phone number on the DNC List for the purpose of being left alone by telemarketers, like Defendant.

25. The account for Hull's phone is held in Hull's personal name and not in the name of a business.

26. Hull uses his phone primarily for personal and household purposes, including communicating with friends and family members.

27. Hull did not inquire of Defendant's services or request Defendant's services.

28. Hull never visited Defendant's website before receiving the phone calls that are the subject of this Complaint.

29. Hull did not provide Defendant "prior express written consent" as that term is defined in 47 C.F.R. § 64.1200(f)(9) or any other form of consent to Defendant to call his phone.

30. Hull did not and has not ever transacted business with Defendant.

31. On January 24, 2025, at approximately 6:12 p.m., Hull received a prerecorded voicemail from or on behalf of Defendant. The prerecorded voicemail stated: "Hello. This is Morgan with an important update from our loan eligibility group. According to my system you may be qualified for a consolidation loan of up to $85,000. Payments for these loans can start as low as $480 per month. Please give me a call as soon as possible at 1-877-200-2515. Again, that number is 877-200-2515."[1]

32. Hull also received the identical prerecorded voicemail from or on behalf of Defendant on the following occasions:

- January 14, 2025 – 4 additional calls
- January 15, 2025 – 1 call
- January 16, 2025 – 1 call
- January 17, 2025 – 1 call
- January 18, 2025 – 2 calls

[1] The prerecorded voicemails are referred to in this Complaint as "prerecorded voicemails" or "robocalls."

- January 23, 2025 – 1 call
- January 24, 2025 – 1 call
- January 30, 2025 – 2 calls
- January 31, 2025 – 1 call
- February 5, 2025 – 1 call
- February 6, 2025 – 1 call
- February 13, 2025 – 1 call
- February 19, 2025 – 2 calls
- February 24, 2025 – 1 call
- February 25, 2025 – 1 call
- February 26, 2025 – 1 call
- March 24, 2025 – 1 call
- March 28, 2025 – 1 call
- April 3, 2025 – 1 call

33. In total, Hull received at least 26 of these identical prerecorded voice calls from or on behalf of Defendant. It is possible Hull received calls from or on behalf of Defendant in addition to these calls.

34. After being bombarded by these voicemails which filled up Hull's voicemail box, Hull called back the phone number 877-200-2515, to determine who was calling him.

35. Upon calling the number, a live person eventually answered the call and identified the website of the company calling as "usclarity.com." The live representative also stated that their main office was in California and that they work with creditors of people who have more than $10,000 in debt.

36. The live person further advised that they only had Hull's name and phone number and did not have any record of Hull providing Defendant consent to call him.

37. On information and belief, many debt settlement companies, like Defendant, market their services by advising people that they may qualify for large consolidation loans.

38. On information and belief, the purpose of each of Defendant's robocalls to Hull and the putative class members was to attempt to get Hull and the putative class members to use Defendant's debt resolution services.

39. Hull and the putative class members did not provide Defendant "prior express written consent" as defined in 47 C.F.R. § 64.1200(f)(9) or any other form of consent to Defendant to place calls to their phones.

40. On information and belief, Defendant knew that it should not have placed calls to Hull and the putative class members, yet incessantly placed calls to them anyway.

41. On information and belief, Defendant knew that it did not have "prior express written consent," or any form of consent, to place robocalls to Hull and the putative class members yet called them anyway.

42. The robocalls Defendant placed to Hull and the putative class members were harassing, irritating, invasive and annoying.

43. Defendant's robocalls invaded Hull's and the putative class members' right to privacy, namely the right to be left alone from unwanted telemarketing calls.

44. Defendant's robocalls caused Hull and the putative class members to waste time and be disrupted from their daily activities, addressing and/or responding to the unwanted robocalls.

## DIRECT AND VICARIOUS LIABILITY

45. On May 9, 2013, the FCC determined that this was not a basis for avoiding liability within a Declaratory Ruling that held that sellers may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted, because "[s]ellers may have thousands of "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re: Dish Network, LLC,* 28 F.C.C. Rcd. 6574 at 6588 (May 9, 2013) (internal citations omitted).

46. Moreover, the May 2013 FCC ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal actual agency and immediate direction and control over third parties who place a telemarketing call. *Id.* at 6587 n. 107.

47. The evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.,* at 6593.

48. If Defendant directly placed the calls at issue to Hull and the putative class members, Defendant is directly liable for those calls.

49. However, Defendant may have hired, encouraged, permitted, and enjoyed the benefits of mass telemarketing by third parties who are unknown at this time as the calls only led back to Defendant and no other entity.

50. To the extent a third party placed the calls at issue, such party or parties had actual and/or apparent authority to act on behalf of Defendant.

51. Likewise, Defendant may have also ratified a third party's violations of the TCPA by accepting leads and deriving profit from the improper robocalls.

52. Defendant controlled or had the right to control the marketing activities of any potential third party. Among other things, the robocalls placed to Hull were like the robocalls placed to other consumers, including other consumers who previously filed suit against Defendant.

53. Defendant is not permitted under the law to outsource and contract its way out of liability by directing and benefiting from its agents' TCPA violations.

54. For the counts identified below, if Defendant directly placed the robocalls, it is directly liable. In the alternative, to the extent any robocalls were made by a third-party agent(s) acting on Defendant's behalf, Defendant can be held jointly and severally liable as Defendant is vicariously liable for the placing of those robocalls.

## CLASS ALLEGATIONS

55. Pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), Hull brings this Complaint as a class action on behalf of himself and all others similarly situated. This action satisfies the requirements of numerosity, commonality, typicality, and adequacy of representation.

56. Pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2) and 23(b)(3), Hull seeks to represent the following classes:

> **Prerecorded Voice Call Class:** All persons in the United States who from four years prior to the date of the filing of this lawsuit until the date of class certification

to whom Defendant (or someone acting on its behalf) placed a prerecorded voice call to said person's cellular phone.

**DNC Class:** All persons in the United States who from four years prior to the date of the filing of this lawsuit until the date of class certification: (1) received two or more calls during a 12-month period in connection with the marketing of Defendant's products and/or services; (2) whose number was registered on the DNC List for more than 30 days at the time the calls were received; and, (3) whose phone number is registered to an individual and not a business.

57. Hull reserves the right to add classes, administrative subclasses, and/or to amend the definition of the proposed class, during the lawsuit proceedings.

58. The members of the proposed classes are so numerous that joinder of all members is impracticable. Hull reasonably believes that hundreds or thousands of people have been harmed by Defendant's actions. The names and phone numbers of the members of the proposed classes are readily identifiable through records available to Defendant or those acting on its behalf.

59. Members of the proposed classes have suffered damages in an amount such that it would make filing separate lawsuits by individual members economically infeasible.

60. Common questions of law and fact exist as to all members of the proposed classes and predominate over any questions affecting only individual members. The questions of law and fact common to the proposed class include, but are not limited to:

a. Whether Defendant placed prerecorded voice calls to Hull and the class members;

b. Whether Defendant's conduct of placing prerecorded voice calls violates 47 U.S.C. § 227(b) of the TCPA, and the TCPA's corresponding regulations;

c. Whether Defendant's conduct of placing calls to persons whose phone numbers were on the DNC List violates 47 U.S.C. § 227(c) of the TCPA, and the TCPA's corresponding regulations;

d. Whether an agency relationship exists between Defendant and anyone placing such calls on its behalf;

e. Whether Defendant maintained and effectively implemented sufficient protocols to prevent calling persons whose phone numbers were registered on the DNC List;

f. Whether Defendant's manner and system of obtaining consumer's "prior express written consent" was legally deficient;

g. Whether Hull and the putative class members are entitled to increased damages for each violation based on the willfulness of Defendant's conduct.

61. Hull's claims are typical of the claims of the proposed class members because his claims arise from the same practice that gives rise to the claims of the members of the proposed classes and are based on the same legal theories.

62. Hull and his counsel will fairly and adequately protect the interests of the members of the proposed classes. Hull's interests do not conflict with the interests of the proposed classes he seeks to represent. Hull has retained lawyers who are competent and experienced in consumer litigation, the TCPA and class action litigation.

63. Hull's counsel will vigorously litigate this case as a class action, and Hull and his counsel are aware of their responsibilities to the putative members of the class and will discharge those duties.

64. A class action is superior to all alternative methods of adjudicating this controversy, including through individual lawsuits. Joinder of all proposed members of the proposed class in one action is impracticable if not impossible and prosecuting hundreds or thousands of individual actions is not feasible. The size of the individual claims is likely not large enough to justify filing a separate action for each claim. For members of the proposed class, a class action is the only procedural mechanism that will allow recovery. Even if members of the proposed class had the resources to pursue individual litigation, that method would be unduly burdensome to the courts. Individual litigation could also result in inconsistent adjudications.

65. In contrast, a class action is superior in that it will benefit the court and litigating parties through efficiency, economy of scale and unitary adjudication resulting from supervision of the litigation by a single court.

66. Questions of law and fact, particularly (and not limited to) the propriety of placing prerecorded voice calls to Hull and the putative class members and the propriety of placing calls to persons on the DNC List, predominate over questions affecting only individual members.

67. Defendant has acted or refused to act on grounds that apply generally to the classes, so final injunctive relief or corresponding declaratory relief is appropriate with respect to the classes.

**COUNT I**
**Violations of the TCPA, 47 U.S.C. § 227(b) *et seq.***
**(Prerecorded Voice Call Violations – Individually, and on Behalf of The Putative Class)**

68. Hull incorporates by reference the allegations of the previous paragraphs as if fully stated in this Count.

69. The TCPA provides, in part that: "It shall be unlawful . . . (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) . . . (iii) to any telephone number assigned to a . . . cellular telephone . . . ." 47 U.S.C. § 227(b)(1)(A)(iii).

70. The FCC's regulations implementing the TCPA provide that prerecorded voice calls that are placed for solicitation purposes cannot be placed without first obtaining the recipient's "prior express written consent." 47 C.F.R. § 64.1200(a)(2).

71. The term "prior express written consent" means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called or texted advertisements or telemarketing messages using . . . an artificial or

prerecorded voice. . . . and the agreement must identify the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered. 47 C.F.R. § 64.1200(f)(9).

72. By placing prerecorded voice calls to Hull and the putative class members without first obtaining their "prior express written consent" (or any form of consent), Defendant violated the TCPA, 47 U.S.C. § 227(b)(1), and the TCPA's corresponding regulations.

73. The penalty for each call placed in violation of the TCPA's restrictions on placing such prerecorded voice calls is $500 and up to $1,500 per call, if the violation is determined to be willful. *See* 47 U.S.C. § 227(b)(3).

74. In addition, the TCPA allows the Court to enjoin Defendant's violations of the TCPA. *See* 47 U.S.C. §§ 227(b)(3)(A).

75. Defendant and/or those acting on their behalf willfully violated the TCPA when placing prerecorded voice calls to Hull and the putative class members' cell phones.

76. Hull and the putative class members are entitled to damages of $500 per violation for each prerecorded voice call placed by Defendant and/or those acting on their behalf that the Court finds violates the TCPA and up to $1,500.00 per violation if the Court finds that Defendant or those acting on its behalf willfully violated the TCPA.

**PRAYER FOR RELIEF**

WHEREFORE Plaintiff Charles Hull, individually, and on behalf of all others similarly situated, requests the Court grant the following relief in his favor and against Defendant Clarity Debt Resolution, Inc:

A. Enter an order against Defendant, pursuant to Federal Rule of Civil Procedure 23, certifying this action as a class action and appointing Hull as the class representative;

B. Enter an order appointing Butsch Roberts & Associates LLC as class counsel;

C. Enter judgment in favor of Hull and the putative members for all damages and other relief available under the TCPA, 47 U.S.C. § 227(b), including injunctive relief, statutory damages of $500 per violation, and up to $1,500 per violation if Defendant willfully violated the TCPA;

D. Enter a judgment in favor of Hull and the Class that enjoins Defendant from violating the TCPA's provisions and regulations;

E. Enter judgment in favor of Hull and the Class for all applicable pre-judgment and post-judgment interest amounts;

F. Enter judgment in favor of Hull and the Class for all costs; and,

G. Award Hull and the Class members such further and other relief the Court deems just and appropriate.

**COUNT II**
**Violations of the TCPA, 47 U.S.C. § 227(c) *et seq.***
**(National DNC List Violations – Individually, and on Behalf of The Putative Class)**

77. Hull incorporates by reference the allegations of the previous paragraphs as if fully stated in this Count.

78. The TCPA provides that it is a violation of the law for a person whose phone number is registered on the DNC List to receive more than one call on their phone "within any 12-month period by or on behalf of the same entity." *See* 47 U.S.C. §§ 227(c)(1), (c)(5); 47 C.F.R. § 64.1200(c)(ii).

79. The penalty for each call placed in violation of the TCPA's restrictions on calling phone numbers registered on the DNC List is up to $500 per call and up to $1,500 per call if the violation is determined to be willful. *See* 47 U.S.C. § 227(c)(5).

80. In addition, the TCPA allows the Court to enjoin Defendant's violations of the TCPA's regulations prohibiting calls to phone numbers registered on the National Do-Not-Call Registry. *See* 47 U.S.C. §§ 227(c)(5)(A).

81. By placing calls to Hull and the putative class members' phone numbers, which were registered on the DNC List, Defendant violated the TCPA, including, but not limited to, 47 U.S.C. §§ 227(c)(1) and the TCPA's corresponding regulations.

82. Defendant and/or those acting on its behalf knew or should have known that Hull's and the putative class members' phone numbers were registered on the DNC List.

83. Defendant and/or those acting on its behalf willfully violated the TCPA when placing calls to Hull's and the putative class members' phones.

84. Hull and the putative class members are entitled to damages of up to $500.00 per violation for each call made by Defendant and/or those acting on its behalf that the Court finds violates the TCPA and up to $1,500.00 per violation if the Court finds that Defendant and/or those acting on its behalf willfully violated the TCPA.

**PRAYER FOR RELIEF**

WHEREFORE Plaintiff Charles Hull, individually, and on behalf of all others similarly situated, requests the Court grant the following relief in his favor and against Defendant Clarity Debt Resolution, Inc:

A. Enter an order against Defendant, pursuant to Federal Rule of Civil Procedure 23, certifying this action as a class action and appointing Hull as the class representative;

B. Enter an order appointing Butsch Roberts & Associates LLC as class counsel;

C. Enter judgment in favor of Hull and the putative members for all damages and other relief available under the TCPA, 47 U.S.C. § 227(c), including injunctive relief, statutory damages of up to $500 per violation, and up to $1,500 per violation if Defendant willfully violated the TCPA;

D. Enter a judgment in favor of Hull and the Class that enjoins Defendant from violating the TCPA's provisions and regulations;

E. Enter judgment in favor of Hull and the Class for all applicable pre-judgment and post-judgment interest amounts;

F. Enter judgment in favor of Hull and the Class for all costs; and,

G. Award Hull and the Class members such further and other relief the Court deems just and appropriate.

**DEMAND FOR JURY TRIAL**

Please take notice that Plaintiff Charles Hull demands a jury trial.

BUTSCH ROBERTS & ASSOCIATES LLC

*/s/ Christopher E. Roberts*
Christopher E. Roberts #61895MO/PRID 2658589
7777 Bonhomme Avenue, Suite 1300
Clayton, MO 63105
Telephone: (314) 863-5700
croberts@butschroberts.com

*Attorney for Plaintiff*